The State of Ohio, Appellee, *v.* O'Leary, Appellant.

(No. 1260—Decided November 26, 1952.)

*Mr. Paul Mikus,* prosecuting attorney, and *Mr. Harold Ewing,* for appellee.

*Mr. Milton Firestone* and *Mr. Wm. F. Waldeisen,* for appellant.

Doyle, J. This is an appeal from a judgment entered upon a jury's verdict of "guilty" on three counts of an indictment, each charging perjury, returned by the grand jury of Lorain county against Michael J. O'Leary.

The appellant, O'Leary, was charged in the first count with committing perjury when testifying under

oath before S. A. Boltz, "a duly commissioned, qualified and acting examiner in and for the Bureau of Inspection and Supervision of Public Offices, Department of Auditor of State, of the State of Ohio." The false testimony alleged to be material to the examination of "the books and affairs of the village of Sheffield Lake, Ohio," was stated as follows:

"That he, the said Michael J. O'Leary, was acquainted with a man named H. L. Allen who was 45 or 50 years old, American born, about 5 feet 8 or 10 inches tall, and weighing about 160 or 170 pounds; that he, the said Michael J. O'Leary, was present when the said H. L. Allen met with and had a discussion with Mr. Perry Poulos about buying a parcel of real estate owned by Perry and Matilda Poulos in Sheffield Lake Village, and known as being a part of Original Township Lot No. 36 in said village; that said H. L. Allen purchased said property from said Perry and Matilda Poulos; and that he, the said Michael J. O'Leary, was present when the said H. L. Allen executed and acknowledged a deed conveying said premises to the Village of Sheffield Lake, Ohio."

The second count charged that he falsely testified before the said examiner, in that:

"* * * he had known a man named H. L. Allen for a year and a half; that said H. L. Allen purchased a parcel of real estate known as part of Original Township Lot No. 36 in the Village of Sheffield Lake, Ohio, from Perry and Matilda Poulos, and later sold the same to the Village of Sheffield Lake, Ohio; and that the said H. L. Allen was not a fictitious name used in connection with said transaction."

The third count charged perjury by alleging false testimony given before the grand jury of Lorain county in the following terms:

"That he, the said Michael J. O'Leary, was ac-

quainted with a man named H. L. Allen; that he, the said Michael J. O'Leary, took said H. L. Allen to Castalia, Ohio, to discuss with one Perry Poulos the purchase of a parcel of real estate owned by said Perry and Matilda Poulos in Sheffield Lake Village, Ohio, and known as being a part of Original Township Lot No. 36 in said Village; that he, the said Michael J. O'Leary, was present in Castalia, Ohio, when said H. L. Allen and said Perry Poulos discussed the purchase by said H. L. Allen of said parcel of real estate, and that on this occasion said H. L. Allen gave to said Perry Poulos a one hundred dollar deposit on said lot; that he, the said Michael J. O'Leary, took said H. L. Allen to Castalia, Ohio, on a second occasion to get the signatures of Perry and Matilda Poulos on a deed to said lot; that said H. L. Allen purchased said lot from Perry and Matilda Poulos; that he, the said Michael J. O'Leary, was present in a Council meeting of the Village of Sheffield Lake, Ohio, at which meeting said H. L. Allen gave a description of said lot to said Village Council and offered to sell said lot to the village; that he, the said Michael J. O'Leary, was present when H. L. Allen executed and acknowledged the deed of said lot to said Village of Sheffield Lake, Ohio.''

The record of testimony and the exhibits depict a condition in the administration of affairs of the Village of Sheffield Lake to have required, in the orderly processes of government, an examination into the honesty and regularity of one of its transactions. The state auditor's office undertook to make such an examination. In brief, the following situation was shown to exist:

As a part of the development of a sewage disposal plant for the village, it was necessary that land be acquired for a site. The land ultimately selected had been owned by a couple named Perry and Matilda

Poulos, who, approximately three weeks before the sale to the village, had, by deed, granted the land to one H. L. Allen. The purchase price paid to the Pouloses and supposedly paid by Allen was $4,000. The appellant, O'Leary, an unlicensed dealer in real estate, negotiated the sale. About three weeks later, Allen deeded the land to the village for approximately $8,000, and the appellant received the sum of $500 from Allen for his part in the transaction. Under this and many other suspicious circumstances, the investigation was directed toward the determination of whether H. L. Allen was a "dummy" fictitious character and whether the name "Allen" was used as a "cover" by village officials; and toward the determination of who had prior knowledge of the location of the site and who raised the money to pay the Poulos family—with the result that a handsome profit upon the ultimate sale to the village was realized.

It is a crime in this state for anyone to wilfully and corruptly testify to a falsehood as to a material matter in a proceeding before an officer created by law, or a duly impaneled grand jury, or in a matter in relation to which an oath is authorized by law, following the lawful administration of an oath to such person. Section 12842, General Code. To constitute the crime, the subject matter of the false testimony must be in respect to a matter material in the proceeding. *McCaffrey* v. *State,* 105 Ohio St., 508, 138 N. E., 61.

It is the duty of the Bureau of Inspection and Supervision of Public Offices to examine village offices within this state (Section 274 *et seq.,* General Code), and in such examination "inquiry shall be made into the methods, accuracy and legality of the accounts, records, files and reports of the office, whether the laws, ordinances and orders pertaining to the office have been observed, and whether the requirements of

the bureau have been complied with'' (Section 284, General Code).

Specific power is given a state examiner in the Bureau of Inspection and Supervision of Public Offices to compel the attendance of witnesses and the production of books and papers, and to administer oaths in the process of an investigation. Section 285, General Code.

It is a crime for a village official to be interested in a contract for the purchase of property for the use of the village, or to be interested in the profits from such a contract. Sections 12910, 12911, 12912, General Code.

From the foregoing references to the statutory law of this state, it is obvious that state examiner S. A. Boltz was within the orbit of his powers when he brought the appellant before him, administered an oath, and proceeded to inquire into the identity of the person who had sold a parcel of real property to the village, and who had reaped such a quick profit. It is reasonable to suppose that someone with knowledge of the location of the site before it became public knowledge, may have been interested in the contract for purchase, or in the profits, and there was reasonable grounds for suspicion that the ''someone'' may have been a public official and that a crime had been committed. False testimony directed to the identity of the owner of the land and the grantor thereof to the village was testimony not only relevant to a material matter in the proceeding, but in fact went to the very heart of the inquiry. The very purpose of the investigation was to determine whether H. L. Allen was a real person or was a name used to conceal the real party or parties in interest, and, if so, who the real parties in interest were. Were they public officials?

The verdict of the jury indicates that it disbelieved

the appellant's testimony describing his various encounters and business connections with H. L. Allen, and his statements relative to the activities of H. L. Allen as set forth in the indictments. After a review of the record of evidence, this court is unanimously of the opinion that such a finding by the jury is sustained by the evidence, and that the verdict of "guilty" is neither contrary to law nor manifestly against the weight of the evidence.

It has been stated above that the criminal offense of perjury could be properly established through false testimony on the subject matter of the inquiry before the examiner. Of course, the same statement applies to false testimony under oath given before the grand jury.

There are many grounds of error advanced, which it is claimed are prejudicial to the rights of the appellant. Examination has been made of them all, and we find none of a prejudicial character. We find that the defendant has had a fair trial, and the record sustains the jury's verdict. Section 13449-5, General Code.

The judgment is affirmed.

*Judgment affirmed.*

HUNSICKER, P. J., and STEVENS, J., concur.